UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| CHARLES W. CARSON and<br>TOMOKO CARSON, | :<br>: |
| Plaintiffs, | :<br>:<br>: |
| v. | : No. 5:17-cv-01949 |
| THE NATIONAL RAILROAD PASSENGER<br>CORPORATION (AMTRAK);<br>S. CAMPBELL, *Amtrak Police Officer*;<br>ADRIAN GIBB DAVIS, *Amtrak Police Officer*;<br>JOHN DOE, *Amtrak Police Officer*, | :<br>:<br>:<br>:<br>:<br>: |
| Defendants. | : |

_____

**O P I N I O N**

**Plaintiffs' Revised Motion to Amend Complaint, ECF No. 29 – Granted in part**
**Plaintiffs' Motion to Reconsider, ECF No. 32 – Denied**

**Joseph F. Leeson, Jr.**                                                                                                 **June 4, 2018**
**United States District Judge**

**I.**     **Introduction**

Plaintiffs Charles W. Carson and Tomoko Carson have filed a Revised Motion to Amend their Complaint[1] and a Motion to Reconsider their Request for an Evidentiary Hearing. For the reasons set forth below, the Revised Motion to Amend is granted in part and the Motion to Reconsider is denied.

---

[1] The Carsons initially filed a motion to amend on March 29, 2018. ECF No. 26. Before the Court ruled on the motion, the Carsons filed the present Revised Motion to Amend. Thereafter, the Court denied the initial motion as moot. *See* Order, April 12, 2018, ECF No. 31. In the present Opinion, therefore, the Court considers only the Revised Motion to Amend, as well as the Revised Proposed Amended Complaint attached thereto.

II.   Background

A.   The Initial Complaint

The Carsons filed their Complaint in this matter in April 2017. ECF No. 1. The Complaint alleges that on the evening of March 5, 2017, the Carsons purchased tickets at 30th Street Station in Philadelphia, Pennsylvania, to travel on Amtrak train number 671 to Lancaster, Pennsylvania. Compl. ¶ 10. Before descending to the train platform, Mr. Carson approached the Amtrak information desk and asked the station manager, Defendant Adrienne Gibbs-Davis, whether it was possible to upgrade the Carsons' tickets to business class. Compl. ¶ 12. Gibbs-Davis replied that the ticket office was closed but that Mr. Carson could upgrade by using the kiosk nearby. Compl. ¶ 13. Mr. Carson asked Gibbs-Davis for further instructions, but Gibbs-Davis responded rudely and asked for the Carsons' tickets. Compl. ¶¶ 14-17. Mr. Carson provided the tickets and asked for Gibbs-Davis's name. Compl. ¶¶ 18-19. Gibbs-Davis raised her voice and provided her first name. Compl. ¶¶ 20-22. Mr. Carson began to write down her name and stated that he may write a letter to Amtrak concerning the service he received. Compl. ¶¶ 22-23. Gibbs-Davis then "angrily pronounced" her full name and stated that she would have the Amtrak police take a picture of Mr. Carson once he began to board. Compl. ¶ 24.

Shortly after the Carsons boarded the train, Defendant Amtrak Officer Sean Campbell approached them and told them that they needed to leave the train and that they were not going to ride Amtrak that night. Compl. ¶¶ 35-41. The Carsons exited the train onto the platform, where they encountered Officer Campbell along with "four or five uniformed police officers as well as a few Amtrak personnel standing nearby." Compl. ¶¶ 42-46. Mr. Carson asked Officer Campbell to provide him with his business card, and Officer Campbell replied that he would provide his card in exchange for the Carsons' tickets. Compl. ¶¶ 48-50. Mr. Carson asked Officer Campbell

if he would guarantee a refund for their tickets, but Officer Campbell declined. Compl. ¶ 51. The Carsons were then directed to proceed up the stairway to the passenger lobby. Compl. ¶ 53. After the Carsons reached the lobby, they began to walk toward the station exit when they encountered another Amtrak officer—identified in the Complaint as Officer John Doe—who told them that there was now a no-trespass order against them and ordered them not to return to the station. Compl. ¶ 58. The Carsons left the station and called Mr. Carson's son, who drove from Lancaster to pick them up; they arrived home in Lancaster around 2:30 a.m., approximately four hours later than their scheduled train arrival. Compl. ¶¶ 60-61. On the basis of these allegations, the Carsons assert claims under § 1983 for deprivation of their constitutional rights, as well as claims under state law.

B.     **The Revised Proposed Amended Complaint**

In their Revised Motion to Amend, the Carsons state that they seek to amend their Complaint in light of "additional facts" that they learned during discovery—in particular, surveillance footage of the train station from the date of the incident. *See* Pls.' Rev. Mot. Am. 1-2, ECF No. 29. Further, they seek to add allegations and claims based on a series of incidents that occurred in March 2018, a year after the events alleged in the initial Complaint. *See id.*

A review of the Revised Proposed Amended Complaint shows that the Carsons seek to add two Defendants: Amtrak conductor Danielle Rhodes, who was allegedly involved in the Carsons' removal from the train on March 5, 2017, and Amtrak Police Officer Matthew Rockey, who the Carsons allege is the officer identified as "John Doe" in the initial Complaint. *See* Rev. Proposed Am. Compl., ECF No. 29-1. Further, the Carsons' Revised Proposed Amended Complaint seeks to add over fifty paragraphs of factual allegations and ten new causes of action, as detailed below.

In paragraphs 29 to 44 of the Revised Proposed Amended Complaint, the Carsons seek to add allegations concerning the conduct of Rhodes, the train conductor, and Gibbs-Davis, the station manager. These paragraphs allege that the surveillance video shows that after Gibbs-Davis finished speaking with Mr. Carson at the information desk, she descended to the train platform to speak with Rhodes. Rev. Proposed Am. Compl. ¶ 30. Rhodes and Davis then ascended to the concourse, where they met with Officer Campbell, who then proceeded to descend to the platform and remove the Carsons from the train, as alleged in the initial Complaint. *Id.* ¶¶ 33-35. A number of the paragraphs in this section also include allegations about a written statement Gibbs-Davis made on May 8, 2017, concerning the March 5 incident, which was produced in discovery and which the Carsons allege includes "false and perjured testimony." *See, e.g.*, *id.* ¶¶ 37-38.[2]

In paragraphs 60 to 65 of the Revised Proposed Amended Complaint, the Carsons seek to add allegations concerning Amtrak Police Officer Steven Sibbert, who allegedly made a written statement in May 2017 concerning his interactions with the Carsons on the day of the incident.[3] The Carsons allege that, contrary to Officer Sibbert's statement, they never encountered him on the day of the incident, and that his statement is defamatory. The Carsons, however, do not seek to add Officer Sibbert as a Defendant, and they allege that he "is not involved in these proceedings." *Id.* ¶ 60.

---

[2] Paragraph 59 of the Proposed Amended Complaint includes further allegations against Gibbs-Davis, Rhodes, and Officer Campbell which were not included in the initial Complaint. Specifically, this paragraph alleges that Gibbs-Davis and Rhodes "induced" Officer Campbell to interfere with the Carsons' contract of carriage with Amtrak, such that Officer Campbell's conduct "resulted in the tort of interference with an existing contract."

[3] The Carsons described the alleged statement in further detail in their February 2018 Motion for Evidentiary Hearing. ECF No. 23.

In paragraph 77 of the Revised Proposed Amended Complaint, the Carsons seek to add allegations concerning two alleged batteries committed by Officer Campbell against Mr. Carson after the Carsons were removed from the train; these batteries are allegedly shown in the surveillance footage produced in discovery. First, the Carsons allege that the surveillance video shows that as they ascended the escalator back to the passenger lobby, Officer Campbell stood behind Mr. Carson on the escalator and "did a pat down" on him, which allegedly constituted a battery. *Id.* ¶ 77. The second alleged battery occurred when Mr. Carson "turn[ed] to the right to depart" the station; the Carsons allege that "[t]he videography clearly shows" that Officer Campbell's "second . . . unwanted offense contact" with Mr. Carson occurred at this time. *Id.* The Revised Proposed Amended Complaint does not further describe the nature of this second alleged battery.

In paragraph 83 of the Revised Proposed Amended Complaint, the Carsons seek to add allegations that the officer identified as John Doe in the initial Complaint—i.e., the officer who allegedly told the Carsons that they were forbidden to return to the station—is Amtrak Police Officer Matthew Rockey. In paragraphs 84 to 86, they allege that Officer Rockey falsely claimed in a May 9, 2017 statement that he did not interact with the Carsons.

In paragraphs 87 to 91 of the Revised Proposed Amended Complaint, the Carsons seek to add allegations that Defendants are "conspiring to obstruct justice" by failing to produce all of the surveillance videos from March 5, 2017.

In paragraphs 103 to 127 of the Revised Proposed Amended Complaint, the Carsons seek to add allegations concerning an incident that occurred on March 4, 2018—nearly a year after the events at the center of this case—involving a friend of theirs named Loy Manes, II. This alleged incident is described in detail in a document titled "Loy Manes Statement of Facts," which is

signed by Manes and attached as Exhibit A to the initial Proposed Amended Complaint. *See* Manes Statement, ECF No. 26-1.[4] According to the statement, on March 4, 2018, Mr. Carson dropped Manes off at the 30th Street Station in Philadelphia. There, Manes bought a ticket for Amtrak train number 671 to Lancaster and, before boarding, took pictures of the main concourse and of the train conductor. After Manes boarded the train and it departed for Lancaster, he called Mr. Carson on his cell phone to describe what he had seen at the station. When Manes ended his conversation with Mr. Carson, the woman sitting next to Manes got up and spoke with the train conductor. When the train arrived in Lancaster, the train conductor pointed out Manes to several police officers, who then approached Manes, asked him for his name and identification, and questioned him about his behavior on the train. A few minutes later, the officers learned that there was an outstanding warrant for Manes's arrest, and they arrested him. The following day, Manes was questioned by two FBI officers about his conduct on the train. He told them he was taking pictures of the train station to gather evidence for Mr. Carson's lawsuit. On March 14, an Amtrak officer named DeGrazia further questioned Manes about his conduct on the train.

In their Revised Proposed Amended Complaint, the Carsons allege that Danielle Rhodes—the conductor on their March 5, 2017 train—was also the conductor on the train ridden by Manes and that she made false statements about Manes that resulted in him being unlawfully arrested. Rev. Proposed Am. Compl. ¶ 106. They allege that on March 7, 2018, three days after Manes was arrested, two Lancaster City detectives visited the Carsons' home, falsely stated that they were FBI agents, and searched the home, in violation of the Carsons' constitutional rights,

---

[4] The Carsons did not attach the Manes Statement to their Revised Proposed Amended Complaint, but they indicate in the "List of Exhibits" attached to the Revised Proposed Amended Complaint that they seek to include the Manes Statement as an exhibit to the Revised Proposed Amended Complaint, and they note that this statement was earlier docketed as part of their initial Proposed Amended Complaint.

and in so doing aided and abetted Amtrak Officer Joseph DeGrazia, the Amtrak Officer who questioned Manes on March 14. *Id.* ¶ 121.

In addition to these new factual allegations, the Carsons also seek to add the following ten causes of action to the initial Complaint. In Count IX of the Revised Proposed Amended Complaint, the Carsons seek to assert a claim of "Conspiracy against Rights" under 18 U.S.C. § 241, a criminal statute, based on the alleged events of both March 5, 2017, and March 2018. *Id.* ¶¶ 144-45. In Count X, they seek to assert a claim of "Deprivation of Rights under Color of Law" under 18 U.S.C. § 242, another criminal statute,[5] based on the alleged events of March 5, 2017. *Id.* ¶¶ 146-47. In Count XI, they seek to assert a claim of "Invasion of Privacy," based on the alleged illegal search of their home in March 2018. *Id.* ¶¶ 148-49. In Count XII, they seek to allege a claim of "PA Common Law Tort –Retaliation" based on the alleged events of March 5, 2017, and March 2018. *Id.* ¶¶ 150-52. In Count XIII, they seek to assert a claim of "Police Misconduct Provision" under 42 U.S.C. § 14141, based on the alleged events of March 2018. *Id.* ¶¶ 153-59.[6] In Count XIV they seek to assert a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1960-61, based on the alleged events of March 5, 2017, and March 2018, as well as allegations concerning the amount of fees Amtrak pays to its outside counsel. *Id.* ¶¶ 160-81. In Count XV, the Carsons seek to assert a battery claim, based on Officer Campbell's alleged contact with Mr. Carson on March 5, 2017. *Id.* ¶¶ 182-84. In Count XVI, they seek to assert a claim of "Harassment" under 18 Pa. Cons. Stat. § 2709, a criminal statute, against Officer Rockey, based on his alleged conduct on March 5, 2017. *Id.* ¶¶ 185-86. In Count

---

[5] The Carsons seek to assert these claims despite acknowledging that "[t]here is no private cause of action under 18 U.S.C. §§ 241-242." *Id.* ¶ 154.
[6] The Carsons seek to assert these claims despite acknowledging that a claim under 42 U.S.C. § 14141 (which has been recodified at 34 U.S.C. § 12601) may be brought only by the United States Attorney General. *See id.* ¶ 159.

7
060418

XVII, they seek to assert a claim of "Crime of False Reports," also under 18 Pa. Cons. Stat. § 2709, against Gibbs-Davis and Rhodes for their conduct on March 5, 2017. *Id.* ¶¶ 187-89. In Count XVIII they seek to assert a claim of defamation against Amtrak Officer Sibbert, although, as mentioned above, they do not seek to add Officer Sibbert as a Defendant and they allege that he "is not involved in these proceedings." *Id.* ¶¶ 190-92.

**C.     Defendants' Response to the Revised Motion to Amend**

Defendants oppose the Carsons' Revised Motion to Amend, contending that the Motion is untimely, unduly delayed, and prejudicial.

First, with respect to timeliness, Defendants argue that the Court's Scheduling Order, issued in October 2017, stated that the deadlines to amend pleadings and join parties was "no later than thirty (30) calendar days before the close of fact discovery," which was set for February 5, 2018. *See* Scheduling Order, October 6, 2017, ECF No. 20. Defendants acknowledge that the Court later extended the fact discovery deadline to April 27, 2018, but they point out that the order granting that extension stated that "[a]ll other deadlines set forth in the Scheduling Order are unchanged." *See* Order, April 5, 2018, ECF No. 28. Accordingly, they contend that the deadline to amend the pleadings was January 5, 2018, and the Carsons' Motion to Amend, which was initially filed on March 29, 2018, is therefore untimely.

Second, Defendants argue that the Carsons' Motion was unduly delayed. They argue that many of the proposed amendments are based on surveillance footage that Amtrak provided to the Carsons on November 6, 2017, but the Carsons did not file their initial Motion to Amend until the end of March 2018. Defendants state that they have already completed all written discovery and have deposed Mr. Carson, and they argue that permitting the Carsons' proposed amendments at this time would be unduly prejudicial.

Third, Defendants argue that the Carsons' Motion is unduly prejudicial in other respects as well. They argue that the Carsons' Proposed Amended Complaint improperly includes "ad hominem attacks against Defendants' and defense counsels' credibility, and immaterial allegations regarding alleged inconsistencies in materials produced in discovery, asserted only to attack and prejudice Defendants, and should not be permitted." Defs.' Resp. Pls.' Mot. Am. 11, ECF No. 33. Further, they contend that the Carsons' proposed allegations related to Manes's March 2018 train ride are wholly unrelated to the Carsons' claims concerning the alleged events of March 5, 2017.

### D. The Motion for Reconsideration

In February 2018, the Carsons filed a motion for an evidentiary hearing "to allow for the recantation of Defendants['] affidavits, so they are given one last chance to prevent their criminal prosecution re their criminal conspiracy to suborn perjury," as well as to determine whether Amtrak is concealing additional surveillance video footage. *See* Pls.' Motion for Evidentiary Hearing 25, ECF No. 23. The Court denied the motion. *See* Order, April 5, 2018, ECF No. 28. In April 2018, the Carsons filed a motion for reconsideration of that decision, stating that a hearing is necessary in order to determine whether Amtrak is concealing additional surveillance footage as well as certain reports filed by Rhodes.

### III. Analysis

### A. **The Revised Motion to Amend is granted in part.**

The Carsons' Revised Motion to Amend is governed by Federal Rule of Civil Procedure 15(a) and (d). Rule 15(a) governs amended pleadings and provides in pertinent part that "[t]he

court should freely give leave [to amend] when justice so requires."[7] Rule 15(d) governs supplemental pleadings and provides in pertinent part that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." As indicated by the language of Rule 15(d), a supplemental pleading "refers to events that occurred after the original pleading was filed." *Owens–Illinois, Inc. v. Lake Shore Land Co., Inc.,* 610 F.2d 1185, 1188 (3d Cir. 1979). This differs from an amended pleading, "which covers matters that occurred before the filing of the original pleading." *Id.*

The standard governing motions to amend under Rule 15(a) is essentially the same as the standard governing motions for supplemental pleadings under Rule 15(d). *See CMR D.N. Corp. v. City Of Philadelphia*, No. CIV.A.07-1045, 2011 WL 857294, at *4 (E.D. Pa. Mar. 11, 2011). In either situation, leave to file an amended or supplemental complaint should be freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to defendants, or futility. *See id.* Further, in the case of supplemental pleadings in particular, the supplemental facts should be connected to the original pleading. *See id.* "It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). In evaluating prejudice, courts consider, among other factors, "whether allowing an amendment

---

[7] As indicated above, Defendants argue that the Carsons filed their Motion to Amend after the deadline set by the Court for amended pleadings, based on the language of the Court's April 5, 2018 order granting an extension of the discovery deadline only. If the Carsons' Motion were untimely, it would be governed by Rule 16(b), and they would have to show "good cause" for their amendment. Defendants' interpretation of the Court's April 5 order is not unreasonable, but when the Court granted the extension of the fact discovery deadline it also extended the corresponding deadline to amend. Accordingly, the Carsons' Motion is not untimely.

would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

The Court grants the Carsons' Motion to Amend with respect to their proposed amendments concerning the events of **March 5, 2017 only**, as follows. First, the Carsons are permitted to amend their Complaint to add Amtrak conductor Danielle Rhodes as a Defendant and to include the proposed allegations concerning Rhodes's and Gibbs-Davis's conduct on March 5, 2017, as alleged in paragraphs 29 to 38 of the Revised Proposed Amended Complaint.[8] Second, the Carsons are permitted to include the proposed additional allegations concerning the conduct of Officer Campbell on March 5, 2017, in paragraph 77 of the Revised Proposed Amended Complaint, as well as the proposed battery claim against Officer Campbell asserted in Count XV (paragraphs 182-84).[9] Finally, the Carsons are permitted to add Officer Rockey as a Defendant and to include the proposed allegationa concerning his identity in paragraph 83 of the Revised Proposed Amended Complaint.

The Court acknowledges the Defendants' point that the Carsons had access to the surveillance footage on which these proposed amendments are based months before filing their Motion to Amend. The Court also acknowledges that defending against these additional allegations may require Defendants to conduct additional discovery. But on balance the Court

---

[8] If the Carsons seek to include these allegations in an amended complaint, they are required to revise paragraphs 29 to 38 to include only a short and plain description of the Defendants' alleged conduct on March 5, 2017, and to omit all allegations concerning the Defendants' written statements, as well as all unnecessary characterization of the alleged conduct. For example, the Carsons may allege that Gibbs-Davis descended to the platform to meet with Rhodes, but they may not allege that she did so "deceitfully," as such characterization is unnecessary for the purposes of this action. *See* Rev. Proposed Am. Compl. ¶¶ 29, 30, 36.

[9] As noted above, Paragraph 59 of the Revised Proposed Amended Complaint alleges that Officer Campbell's conduct "resulted in the tort of interference with an existing contract." But the Carsons do not seek to assert this tort among their eighteen causes of action, and thus will not be permitted to include this paragraph.

finds that any such prejudice is not undue when weighed against the judicial economy gained by adjudicating all of the Carsons' claims concerning the events of March 5, 2017, in a single action.

In all other respects, the Carsons' Motion to Amend is denied. First, the Carsons are not permitted to include allegations or claims concerning the manner in which Defendants or their counsel have conducted discovery in this matter, nor are they permitted to include allegations or claims concerning any written statements from Amtrak personnel that were produced in discovery. Specifically, the Carsons are not permitted to include paragraphs 39-44, 60-65, 84-86, and 87-91, nor may they include the defamation claim asserted in Count XVIII of the Revised Proposed Amended Complaint concerning Officer Sibbert's alleged written statement. In addition, as discussed above, if the Carsons seek to amend their Complaint, they must revise paragraphs 29 to 38 to omit all mention of Defendants' written statements. During depositions, the Carsons will have the opportunity to question Gibbs-Davis, Officer Rockey, and the other Amtrak witnesses about these written statements.[10]

Second, the Carsons are not permitted to include allegations or claims based on any of the events of May 2018—i.e., the allegations included in paragraphs 103 to 127, as well as the Invasion of Privacy claim asserted in Counts XI of the Revised Proposed Amended Complaint. As discussed above, these events are alleged to have occurred over a year after the incident at the center of this case and are alleged to have involved a number of persons—including Manes, the Lancaster officers, and Officer DeGrazia—who had no involvement in the events of March 5,

---

[10]     At the in-person conference held on May 17, 2018, the Court addressed several discovery disputes between the parties. *See* Order, May 18, 2018, ECF No. 40. If any additional disputes arise, the parties should attempt to resolve them on their own. If they are unable to do so, the disputes should be brought to the attention of the Court by letter, as set forth in the Undersigned's Policies and Procedures.

12
060418

2017. Defending against such claims would likely require extensive additional discovery, resulting in significant prejudice to Defendants.

Third, the Carsons are not permitted to include claims based on criminal statutes that do not provide a private right of action.[11] This includes the claims asserted in Counts IX, X, XIII, XVI, and XVII of the Revised Proposed Amended Complaint.

Fourth, the Carsons are not permitted to include the proposed RICO claims asserted in Count XIV of the Revised Proposed Amended Complaint. The Carsons' proposed RICO claims involve allegations concerning, among other things, the amount of attorneys' fees Amtrak pays to outside counsel and the events of May 2018. These allegations would require extensive discovery and adding them at this stage would impose undue prejudice on Defendants.

Fifth, the Carsons are not permitted to include Count XII of the Revised Proposed Amended Complaint, which asserts a claim of "PA Common Law Tort – Retaliation." The tort of retaliation does not exist, and so this amendment would be futile.

If the Carsons seek to amend their Complaint consistent with the rulings set forth above, it will be necessary for them to file a Second Revised Amended Complaint. This Second Revised Amended Complaint may include (in addition to the material included in the initial Complaint) only those amendments permitted by this Opinion. Specifically, as set forth above, the Second Revised Amended Complaint may include the proposed allegations concerning the conduct of Amtrak personnel on March 5, 2017, in paragraphs 29-38,[12] 77, and 83, as well as the battery

---

[11] As discussed above, the Carsons acknowledge that several of the statutes under which they seek to bring claims do not provide a private right of action.

[12] As discussed above, if the Carsons seek to include the allegations set forth in paragraphs 29 to 38 in the Second Revised Amended Complaint, they must revise the paragraphs to include only a short and plain description of the Defendants' alleged conduct on March 5, 2017, and to omit all allegations concerning the Defendants' written statements, as well as all unnecessary characterization of the alleged conduct.

claim against Officer Campbell in paragraphs 182 to 184. In all other respects, the Second Revised Amended Complaint must be identical to the initial Complaint, except that the Carsons need not include any allegations or claims that they wish to voluntarily dismiss.[13] Further, the Second Revised Amended Complaint "must be complete in all respects. It must be a new pleading that stands by itself as an adequate complaint without reference to any documents already filed." *See Bowens v. Employees of the Dep't of Corr.*, No. 14-2689, 2015 WL 803101, (E.D. Pa. Feb. 26, 2015).

Finally, the Court will permit no further amendments absent good cause.[14]

**D.     The Motion for Reconsideration is denied as moot.**

As discussed above, the Carsons filed a Motion for Reconsideration of the Court's denial of their Motion for Evidentiary Hearing. They seek such a hearing in order to determine whether Amtrak is concealing additional surveillance footage as well as certain reports filed by Rhodes. After the Carsons filed their Motion, the Court held an in-person settlement conference and status conference in which it addressed the discovery issues raised by the Carsons. Accordingly, the Motion for Reconsideration is denied as moot.

**IV.     Conclusion**

For the reasons set forth above, the Carsons' Revised Motion to Amend is granted in part and the Motion to Reconsider is denied. As explained above, if the Carsons seek to amend their Complaint consistent with the rulings set forth in this Opinion, it will be necessary for them to file a Second Revised Amended Complaint that includes only those amendments permitted by

---

[13]     For example, the Carsons may omit their claim for intentional infliction of emotional distress, which was included in the initial Complaint but omitted from the Revised Amended Complaint.

[14]     Accordingly, although the Court's May 22, 2018 Order granted an extension of the discovery deadline, in this instance the deadline to amend is not extended.

this Opinion in paragraphs 29-38, 77, 83, and 182-84. Any such Second Revised Amended Complaint must be filed no later than **Friday, June 15, 2018**. If the Carsons do not file a Second Revised Amended Complaint by this date, the case will proceed on the original Complaint alone. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge